UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., et al., | § § § § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-0102-B |
| | § | |
| LIFECARE HOLDINGS, INC., et al., | § § § | |
| Defendants. | § | |

### MEMORANDUM ORDER

Pending before the Court are cross-motions for summary judgment arising out of a contract dispute. Through their motion (doc. 40), Plaintiffs (collectively "Highland") ask the Court to grant summary judgment in Highland's favor on its remaining claims for fraud, conspiracy to commit fraud, and negligent misrepresentation. Defendants, have filed their Motion (doc. 41), requesting the Court enter judgment as a matter of law in their favor. Having considered the motions, the briefing of the parties, the evidence, and applicable law, the Court **GRANTS** Defendants motion for summary judgment (doc. 41), and **DENIES** Highland's motion for summary judgment (doc. 40).

### I.

### BACKGROUND

Defendant Lifecare Holdings, Inc. ("Lifecare") operates acute care hospitals in several states.

(Pet. ¶ 17; Def.s' Br. in Supp. of Joint Mot. for Summ. J. Ex. A, App. 1 (Decl. of Phillip Douglas).)[1] The Carlyle Group, a global private equity firm, owns and operates Lifecare. (Pet. ¶ 18.) On August 11, 2005, Ranier Acquisition Corp. purchased Lifecare for $552 million. (*Id.*) As part of this transaction, Lifecare borrowed $225 million under a senior credit facility. (*Id.* at ¶ 19.) A Credit Agreement dated August 11, 2005, set forth the terms of the senior credit facility. (*Id.* at ¶ 20; Def.s' Br. in Support of Def.s' Joint Mot. for Summ. J. Ex. A, App. 1 (Decl. of Philip Douglas).) The parties to the Credit Agreement include (1) the Defendant borrowers Lifecare and LCI Holdco, LLC ("LCI"); (2) lenders consisting of Highland[2] and additional third parties; and (3) Defendant JP Morgan Chase Bank, N.A. ("JP Morgan," and together with Lifecare and LCI, "Defendants"), which is the administrative and collateral agent as well as a lender. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. C, App. 15-35 (Credit Agreement).)

Section 9.02(b) of the Credit Agreement sets out the procedures by which the Credit Agreement may be amended. (*Id.* at 124.) Specifically, section 9.02(b) requires the consent of the "Required Lenders" - lenders representing "50% of the sum of the total Revolving Exposures, outstanding Term Loans and unused Commitments" - to effectuate a valid amendment of the Credit Agreement. (*Id.* at 46, 124.) An amendment passed pursuant to this section gives rise to the instant dispute.

In April 2007, Lifecare sought to amend the Credit Agreement. (Pl.s' Br. in Supp. of Pl.s'

---

[1] Citations to Highland's original petition are given only for facts on which the parties agree, in an effort to provide context for the parties relationship.

[2] The Highland plaintiffs consist of the following entities: Highland Crusader Offshore Partners LP, Highland Credit Strategies Fund, Highland Distressed Opportunities Inc., Highland Floating Rate Advantage Fund, Highland Floating Rate LLC, Restoration Opportunities Fund, Highland Credit Opportunities Fund CDO LP, and Highland Funds I.

Mot. for Summ. J. Ex. 3, App. 52 (Dep. of Phillip Douglas).) Lifecare employed JP Morgan to serve as the arranger of the amendment.[3] (*See* Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 2, App. 31 (Dep. of Jackson Merchant).) In its capacity as arranger, JP Morgan organized a conference call to discuss the terms of the amendment, and invited each lender to attend the call. (*Id.* at 34-5.) The invitation was extended through a secure digital workplace known as Intralinx. (*See id.* at 35-6.) Prior to the conclusion of the conference call, JP Morgan, on Lifecare's behalf, posted all documentation related to the amendment on Intralinx. (*Id.*)

To entice the lenders to consent to the amendment, (*id.* at 34), Lifecare offered to pay each consenting lender a fee in the amount of "0.25% of the aggregate Revolving Commitments and Term Loan Commitments of each such lender[,]" (Pet. ¶ 25). A fee of this nature is commonly referred to as a fee of 25 basis points ("bps"). The necessary number of lenders, including Highland, consented to the April 2007 amendment, and were paid their 25 bps amendment fees. (*Id.*)

Shortly thereafter, in November 2007, Lifecare again sought to amend the Credit Agreement. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. A, App. 2 (Decl. of Phillip Douglas).) JP Morgan organized another conference call to discuss the terms of the newly proposed amendment, and invited each of the lenders to attend the call through Intralinx. (*Id.*; Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 2, App. 36 (Dep. of Jackson Merchant).) All of the materials related to the amendment were posted on Intralinx. (*Id.*) Once again, Lifecare offered to pay consenting lenders an amendment fee of 25 bps. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. A, App. 2

---

[3]The Court acknowledges that Highland stresses the distinction between JP Morgan's roles as agent and arranger. (*See, e.g.,* Pl.s' Br. in Supp. of Resp. to Def.s' Joint Mot. for Summ. J. 18.) This distinction is only material to Highland's reliance arguments. As the Court ultimately rests its disposition on other grounds, this distinction is immaterial.

(Decl. of Phillip Douglas).)  Highland did not consent to this second amendment, and ultimately, the amendment did not receive the required number of consents.  (*Id.*)

Because the initial version of the second amendment failed to pass, Lifecare instructed JP Morgan to circulate a revised second amendment via Intralinx on December 5, 2007.  (*See id.*)  In the newly minted amendment proposal, Lifecare offered to pay consenting lenders an amendment fee of 75 bps instead of 25 bps.  (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. F-1, App. 188 (Amendment Update).)  However, per the explicit terms of the proposal, Lifecare only offered the 75 bps amendment fee to lenders until the required lender vote was achieved.  (*Id.*)  The proposal further stipulated that Lifecare would cease accepting lender consents once the necessary number of votes were received.  (*Id.*)  Just as with the prior version of the second amendment, Highland elected not to agree to the new version.  (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. A, App. 3 (Decl. of Phillip Douglas).)

It soon became apparent to Lifecare that the amendment would fall just shy of the required lender threshold under the terms of the updated version of the second amendment.  (Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 2, App. 37, 43 (Dep. of Jackson Merchant).)  However, on December 6, 2007, Lifecare received feedback from Symphony Management ("Symphony") and Quadrangle Group LLC ("Quadrangle"), two non-party lenders.  (*Id.* at 42.)  Both Symphony and Quadrangle expressed that they may be willing to consent to the amendment for an increased fee. (*See id.*; Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 8, App. 114 (E-mail from Jackson Merchant to Steve Wise).)  In response, Lifecare made a special offer of a 125 bps fee to Symphony and Quadrangle in exchange for their consents; however, Lifecare did not publish these negotiations on Intralinx.  (Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 2, App. 31, 42 (Dep. of Jackson

Merchant).)

During this time, Mark Martinson ("Martinson"), a Highland representative, was in frequent contact with other lenders, tracking the progress of the required lender vote. (Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 5, App. 76 (Dep. of Mark Martinson).) Through Martinson's conversations with other lenders, Highland learned of the increased amendment fee offered to Symphony and Quadrangle. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. E, App. 157-60 (Dep. of Mark Martinson).) Upon learning of the increased amendment fee offered to select lenders, Martinson contacted JP Morgan to inquire about the rumors of a 125 bps amendment fee. (Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 5, App. 75 (Dep. of Mark Martinson).) JP Morgan responded by informing Martinson that it was not able to confirm or deny whether other lenders were offered an amendment fee of 125 bps, but that the offer still available to Highland was the 75 bps published on Intralinx.[4] (*Id.*)

Symphony and Quadrangle both consented to the increased amendment fee, resulting in the passage of the amendment. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. A, App. 3 (Decl. of Phillip Douglas).) JP Morgan thus notified all lenders, through Intralinx, that the amendment had passed and that no further consents would be accepted. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. F-5, App. 210 (Announcement of Amendment Passage).) After the amendment's passage, Lifecare opted to pay all consenting lenders, the majority of whom consented to the amendment for a fee of 75 bps, an amendment fee of 125 bps. (Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 3, App. 58 (Dep. of Phillip Douglas).) Highland, not having

---

[4]Defendants argue that no such conversation took place. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. 2, App. 38-9 (Dep. of Jackson Merchant).)

consented, received nothing. This action resulted.

Highland sued Defendants in state court, alleging, *inter alia*,[5] causes of action for fraud by omission, conspiracy to commit fraud, and negligent misrepresentation. (Pet. ¶¶ 39-73.) The cause was removed to this Court on January 22, 2008. (Def.s' Notice of Removal.) The crux of Highland's argument is that Defendants, in failing to publish the 125 bps fee to Intralinx, misrepresented what the amendment fee offer actually was. Defendants, on the other hand, insist that the 125 bps fee was a special offer available only to select lenders. Thus, Defendants maintain, there was no need to inform all lenders of Defendants' continued negotiations with Symphony and Quadrangle. The parties filed their motions for summary judgment on January 20, 2009. The motions being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden falls upon the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990) (citing *Celotex Corp. v.*

---

[5]In addition to its remaining claims of fraud, civil conspiracy, and negligent misrepresentation, Highland's Original Petition pleaded causes of action for breach of contract, breach of the duty of good faith and fair dealing, and aiding and abetting fraud. (Pet. ¶¶ 39-52, 69-70.) The Court dismissed these latter causes of action for failure to state a claim upon which relief can be granted in a Memorandum Order dated August 27, 2008 (doc. 29).

*Catrett*, 477 U.S. 317 (1986)). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case; rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075; *Latimer*, 919 F.2d at 303.

Once the movant has satisfied its burden, the non-movant must show that summary judgment is inappropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ... by 'conclusory allegations' ... by 'unsubstantiated assertions,' ... or by only a 'scintilla' of evidence ...." *Little*, 37 F.3d at 1075 (internal citations omitted). To assess whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248; *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

### III.

### ANALYSIS

A.   *Fraud by Omission*

Highland first contends that Defendants committed a fraud when they failed to inform Highland of the 125 bps fee offered to Symphony and Quadrangle. Because Defendants opted to pay all consenting lenders a fee of 125 bps upon reaching the required lender vote, the argument goes, Defendants did not inform Highland of what the amendment fee offer actually was. In response, Defendants insist they were not required to inform all of the lenders of their private negotiations with select lenders, and that the decision to pay all consenting lenders an increased amendment fee was made after the required lender vote was achieved as a gesture of gratitude to

those who supported the amendment.

For Highland to prevail on its claim for fraud by omission, Highland must prove: (1) Defendants concealed or failed to disclose a material fact within their knowledge; (2) Defendants knew Highland was ignorant of the undisclosed material fact and did not have an opportunity to discover it; (3) in not disclosing the material fact, Defendants intended to induce Highland to take or fail to take some action; (4) Highland justifiably relied on Defendant's non-disclosure in acting or failing to act; and (5) as a result, Highland suffered injury. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008); *United Teacher Assoc. Ins. Co. v. Union Labor Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005); *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001). The first of these elements, however, is only triggered when Defendants have a legal obligation to disclose the material fact in question. *Dorsey*, 540 F.3d at 341; *Union Teacher Assoc. Ins. Co.*, 414 F.3d at 567; *Bradford*, 48 S.W.3d at 755 (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)).

It is undisputed that Defendants did not disclose to Highland that a fee of 125 bps was offered to Symphony and Quadrangle. Yet, in order for this non-disclosure to be actionable fraud, Defendants must have had a duty to disclose this fact. The Court thus begins its analysis by determining whether a duty to disclose existed.

In Texas, a failure to disclose cannot amount to fraud unless the non-disclosing party has a legal obligation to convey the information. *See, e.g., Dorsey*, 540 F.3d at 341; *Bradford*, 48 S.W.3d at 755. The existence of a duty to disclose is a question of law to be decided by the courts. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 481 (5th Cir. 2000); *Bradford*, 48 S.W.3d at 755. As the Court noted in its August 27, 2008 Memorandum Order on Defendants' motion to dismiss, there has been a debate in Texas jurisprudence on what triggers a duty to disclose. This debate finds its genesis in

the Supreme Court of Texas's *Bradford* decision. *See Bradford*, 48 S.W.3d at 755-56.

In *Bradford*, a 2001 decision, the Supreme Court of Texas reviewed a jury's finding of liability for fraudulent omission. *Id.* at 756. The plaintiff sued defendant, claiming that during commercial lease negotiations defendant only provided a partial disclosure, leaving plaintiff with a false impression as to his rights in the commercial property. *Id.* at 752, 755. In the Supreme Court of Texas, the defendant argued that he did not have a duty to disclose any additional information to the plaintiff during their arms-length business transaction. *Id.* at 755. The court recognized that "[s]everal [Texas] courts of appeals have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *Id.* (citations omitted). The court continued to acknowledge that the RESTATEMENT (SECOND) OF TORTS section 551 imposes a general duty to disclose facts in a commercial setting. *Id.* at 755-56. The court, however, went on to state: "[w]e have never adopted section 551. But even if we were to adopt such a general duty, there is no evidence to support the jury's liability finding under the submitted jury charge." *Id.* at 756 (citations omitted).

Two years after *Bradford*, the Fifth Circuit United States Court of Appeals cited that case for the proposition that a duty to disclose only arises in Texas when the parties are in a confidential or fiduciary relationship. *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 377-78 (5th Cir. 2003). Yet, despite this unequivocal statement in *Coburn*, the Fifth Circuit acknowledged a duty to disclose absent a fiduciary relationship in two subsequent decisions. *Rimade Ltd. v. Hubbard Enter., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) (recognizing that "a speaker making a partial disclosure assumes a duty to tell the whole truth even when the partial disclosure was not legally required"); *Lewis v. Bank of Am.*, 347 F.3d 587, 588 (5th Cir. 2003) (citing *Union Pacific Pac. Res. Group, Inc. v. Rhone-Poulenc*,

*Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) (a pre-*Bradford* decision).

Venturing into these murky waters in *United Teacher Associates Insurance Company*, the Fifth Circuit stated:

> A reasonable jurist might well conclude, certainly after *Bradford*, that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship. This court so held in *Coburn*, the only Fifth Circuit case that discusses the relevant portion of *Bradford*. However, apart from *Coburn*, it would be fair to say that courts (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship.

*United Teacher Assoc. Ins. Co.*, 414 F.3d at 566 (citations omitted). The court, however, ultimately decided the case on other grounds, leaving the question of when a duty to disclose arises for another day. *Id.* Most recently, the Fifth Circuit has stated, without reference to the foregoing tension in authority, that a "duty to disclose may arise 'where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue ....'" *Dorsey*, 540 F.3d at 341 (quoting *In re Enron Corp. Sec., Derivative & "ERISA" Litigation*, 388 F. Supp.2d 780, 788 (S.D. Tex. 2005) [hereinafter *Newby*]). Finally, post-*United Teacher Associates Insurance Company*, cases out of a Texas court of appeals have recognized a duty to disclose in scenarios outside of a fiduciary relationship. *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. - Houston [14th Dist.] 2007); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Co., Inc.*, 217 S.W.3d 653, 670-71 (Tex. App. - Houston [14th Dist.] 2006).

Noting the most recent pronouncements from the Fifth Circuit and the Texas Court of Appeals, the Court, in its August 27, 2008 Memorandum Order on Defendants' Motion to Dismiss, assumed, without deciding, that a duty to disclose only arises in four limited situations: (1) when

there is a fiduciary or confidential relationship between the parties; (2) when one voluntarily makes a representation, that person has a duty to disclose the whole truth; (3) when one makes a representation, that person has a duty to disclose any new information making the prior representation untrue or misleading; and (4) when one makes a misleading partial disclosure.  (Aug. 27, 2008 Mem. Op. 22.)  *See also Newby*, 388 F. Supp.2d at 788; *Four Bros. Boat Works, Inc.*, 217 S.W.3d at 670-71.  The Court, once again, assumes, without deciding, that a duty to disclose arises in each of the foregoing scenarios because Defendants fail to argue that the duty to disclose only arises in the context of a fiduciary relationship, and even under this more liberal standard, the undisputed facts still fail to show a duty to disclose as a matter of law.

To begin, the Court recognizes that Highland fails to produce any evidence indicating that the offer made to it - 75 bps - ever became misleading or untrue.  To the contrary, the undisputed facts and evidence on record support the proposition that Highland was free to consent to the proposed amendment for a fee of 75 bps at any time before the required lender vote was achieved.  Indeed, Highland contends, although Defendants dispute, that Martinson contacted JP Morgan to inquire about the 125 bps fee before the required lender vote was reached.  Highland further insists that in response to his query, Martinson was directed to the 75 bps fee posted on Intralinks.  Accepting Highland's version of events as true, and viewing these facts in the light most favorable to Highland, this account only supports a conclusion that the initial offer made to Highland was never misleading or untrue.  *Cf Four Bros. Boat Works, Inc.*, 217 S.W.3d at 653 (reversing trial court's grant of summary judgment on claim of fraud by omission where subsequent events *foreclosed* plaintiff from exercising rights previously promised); *Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459, 461-62 (Tex. App. - Houston [14th Dist.] 2004) (finding no duty to disclose in an arms

length business transaction when no reasonable person could have interpreted defendant's collective statements as a misrepresentation); *see also Celotex*, 477 U.S. at 325 (stating once movant has satisfied its burden, non-movant bears burden of proving summary judgment inappropriate).

Moreover, Highland's argument in support of finding a duty to disclose asks the Court to question well settled principles of contract law.  As this Court noted in its August 28, 2008 Memorandum Order on Defendants' Motion to Dismiss, the Credit Agreement is a clear, unambiguous contract, entered into by sophisticated parties. (Aug. 28, 2008 Mem. Op. (doc. 29) 11-2.)  In so noting, the Court concluded that Defendants are not required to notify or negotiate with all of the lenders when attempting to amend the Credit Agreement. (*Id.* at 11.)  Thus, under the clear terms of the Credit Agreement, Defendants are permitted to "deal with less than all of the lenders when amending the Credit Agreement." (*Id.*)  Holding Defendants to a duty to disclose their private negotiations with select lenders would be adding a term to an otherwise unambiguous contract - a term that would ultimately deprive Defendants of their contractual right to deal with fewer than all of the lenders. (*See id.* at 11-2.)

Finally, the fact that Defendants ultimately paid all consenting lenders an amendment fee of 125 bps does nothing to save Highland's claim.  The undisputed evidence shows that the decision to pay all consenting lenders the 125 bps fee was not made until after the amendment to the Credit Agreement passed. (*See* Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. Ex. 2, App. 45 (Dep. of Jackson Merchant), Ex. 3, App. 58 (Dep. of Phillip Douglas).)  At this point in time, Highland was no longer able to consent to the amendment because the required lender vote had been reached. (Def.s' Br. in Supp. of Def.s' Joint Mot. for Summ. J. Ex. F-1, App. 188 (Amendment Update).)  Highland thus having proffered no evidence to suggest the representations made to it were misleading, Defendants

had no duty to disclose that the 125 bps fee was offered to Symphony or Quadrangle or ultimately paid to all of the consenting lenders. *See Dorsey*, 540 F.3d at 341 ("duty to disclose may arise 'where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue"). This conclusion is further supported by the tension that exists in the authority governing the existence of a duty to disclose. Even assuming *arguendo* the duty to disclose arises outside of the fiduciary relationship, it certainly does not extend to the undisputed facts presented by this case. No duty to disclose being present, Highland's fraud by omission claim fails at the threshold. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Highland's fraud by omission claim. Because the Court finds that no duty to disclose exists, it will not address the parties' remaining arguments on Highland's fraud by omission claim.

B.    *Conspiracy to Commit Fraud*

Highland alleges that Defendants conspired together to commit the alleged acts of fraud dispensed with above. Civil conspiracy is defined as "a combination of two or more persons [acting] to accomplish an unlawful purpose, or accomplish a lawful purpose by unlawful means[.]" *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). However, civil conspiracy is frequently referred to as a "derivative tort" because "a defendant's liability for conspiracy depends on participation in some underlying tort." *Id.* The Court having granted Defendants motion for summary judgment as to Highland's fraud by omission claim, no underlying tort exists on which to base conspirator liability. *See id.* Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Highland's conspiracy to commit fraud claim.

C.    *Negligent Misrepresentation*

Highland finally contends that Defendants' failure to inform Highland of the 125 bps fee amounts to a negligent misrepresentation. Pursuant to Texas law, the elements of a cause of action for negligent misrepresentation are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (quoting *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). A cause of action for negligent misrepresentation requires the Defendant to misstate an existing fact. *Clardy Mfg. Co.*, 88 F.3d at 357; *5636 Alpha Rd. v. NCNB Tex. Nat'l Bank*, 879 F. Supp. 655 (N.D. Tex. 1995) (Fitzwater, J.). Negligent misrepresentation does not occur when the speaker is merely speculating as to a future event. *Clardy Mfg. Co.*, 88 F.3d at 357.

In the case at bar, Highland alleges that Defendants negligently represented that the amendment fee to be paid to consenting lenders would be 75 bps. This representation amounts to a promise to pay an amendment fee of 75 bps contingent upon Highland's possible future consent to the amendment. Such a promise to perform contingent upon the future actions of another is speculative at best. It certainly is not a statement of existing fact. *See Clardy Mfg. Co.*, 88 F.3d at 357 (distinguishing between the representations to the effect of "the bank *has* approved your loan" and "the bank *will* approve your loan"); *Alpha Rd.*, 879 F.Supp. at 665. As such, the Court **GRANTS** Defendants' motion for summary judgment as to Highland's claim for negligent misrepresentation.

## IV.

## CONCLUSION

For the foregoing reasons, the Court is of the opinion that Defendants' motion for summary judgment (doc. 41) should be and hereby is **GRANTED**.  Having granted Defendants' motion for summary judgment, the Court **DENIES** Highland's motion for summary judgment (doc. 40).

**SO ORDERED.**

**DATED April 21, 2009**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE